AO 106 (Rev. 04/10) Application for a Search Warrant

AUSA Litton

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The residence located at 2511 Lindsay Road, Obetz,<br>Ohio | )<br>)<br>)<br>)<br>)<br>)    Case No. 2:22-mj-696 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A to the Affidavit in Support of this Application, incorporated here by reference.

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B to the Affidavit in Support of this Application, incorporated here by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | -Felon-in-possession of a firearm |
| 21 U.S.C. § 841(a)(1) | -Distribution of controlled substances |

The application is based on these facts:

See the Affidavit in Support of this Application, incorporated here by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Cole Benner*
*Applicant's signature*

Cole D. Benner, Special Agent (ATF)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 10/18/2022 _____

City and state: Columbus, Ohio

Kimberly A. Jolson
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

IN THE MATTER OF THE SEARCH OF
THE RESIDENCE LOCATED AT 2511
LINDSAY ROAD, OBETZ, OHIO

CASE NO. 2:22-mj-696

**FILED UNDER SEAL**

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Cole D. Benner, a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, depose and state the following:

### I. INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a warrant under Rule 41 of the Federal Rules of Criminal Procedure to search the residence located as 2511 Lindsay Road, Obetz, Ohio (the "**SUBJECT PREMISES**"), as further described in Attachment A, and to seize the items described in Attachment B.

2.      I am a Special Agent with the ATF and have been so employed since March 2020. I have attended formal training at the Federal Law Enforcement Training Center in Glynco, Georgia, where I completed the Criminal Investigator Training Program. I also attended the ATF National Academy in Glynco, Georgia, where I completed Special Agent Basic Training. I have received training in the enforcement of various criminal statutes enacted in the Gun Control Act of 1968 and in the National Firearms Act of 1934. I am presently assigned as a Special Agent for the ATF Columbus Field Division, Columbus Group I Field Office. Under 18 U.S.C. § 3051, I am empowered to enforce the criminal laws of the United States.

3.      Prior to becoming a Special Agent with ATF, I attended Otterbein University, where I graduated with a bachelor's degree in History with a minor in Sociology. I was previously employed as an Officer for the Raleigh Police Department, starting in 2016. As part of my previous employment, I completed the North Carolina Basic Law Enforcement Training Academy. I also received additional training in Outlaw Motorcycle Gang Investigations. My duties with the Raleigh Police Department included answering emergency calls for service, locating and arresting fugitives, and conducting drug interdiction investigations. I was also previously employed as a Sheriff's Deputy for the Forsyth County, North Carolina, Sheriff's Office, starting in 2019. My duties as a Sheriff's Deputy included answering emergency calls for service, serving subjects with civil and criminal processes, and conducting traffic stops related to drug interdiction.

4.      As a special agent, I have participated in many federal and state investigations involving the sale, possession, and trafficking of firearms and controlled substances. Through my participation in these investigations, I have debriefed numerous defendants and witnesses with personal knowledge regarding firearms and/or narcotics trafficking. I have also conducted physical and electronic surveillance, seized evidence and contraband, executed search warrants, and arrested defendants. As a result of my training and experience, I am familiar with federal laws surrounding the illegal possession and sale of both firearms and controlled substances.

5.      This affidavit is intended to show that there is sufficient probable cause for the above-described search warrant and does not purport to set forth all my knowledge of, or investigation into, this matter. The facts and information contained in this affidavit are based on my personal knowledge, my training and experience, my interviews of various witnesses, including law-enforcement personnel who participated in this investigation, and my review of certain records and documents.

2

## II.  BACKGROUND ON ILLEGAL FIREAM POSSESSION

6.      Federal law generally prohibits individuals who have been convicted of a crime punishable by imprisonment for a term exceeding one year from possessing a firearm or ammunition if the individual knows they have been convicted of such an offense and the firearm or ammunition traveled in or affected interstate or foreign commerce prior to the individual's possession of the item(s).  *See* 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

7.      I know based on my training and experience that individuals who possess firearms and ammunition often possess other items commonly used or acquired in connection with the possession of firearms and ammunition.  Some of these items include, but are not limited to, other firearms, firearm parts, additional ammunition, firearm receipts, firearm brochures or owner's manuals, records of sale or acquisition of firearms, firearm magazines, and holsters.

8.      I know that individuals who possess firearms and ammunition as felons or otherwise, often store those firearms and ammunition in their homes or cars, so that the firearms and ammunition are easily accessible.  I also know that firearms are durable and non-perishable goods, which can be expected to remain in the individual's possession for extended periods of time.

9.      I know that individuals who possess firearms and ammunition frequently utilize cell phones to take photographs and videos of themselves in possession of their firearms and ammunition.  These same individuals also utilize cellphones, to include calls, texts, and social media applications, to arrange the purchase and sale of firearms, ammunition, and/or firearm-related accessories.

3

10.    I also know from my training and experience that "cell phones and the services they provide are 'such a pervasive and insistent part of daily life' that carrying one is indispensable to participation in modern society." *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018) (quoting *Riley v. California*, 573 U.S. 373, 385 (2014))

### III. BACKGROUND ON CONTROLLED SUBSTANCES TRAFFICKING

11.    Federal law also generally prohibits the manufacture, distribution, and dispensation of controlled substances—including methamphetamine, its salts, isomers, and salts of its isomers—and the possession with intent to do any of those activities. *See* 21 U.S.C. § 841(a)(1), 841(b)(1)(A)(viii), 841(b)(1)(B)(viii), and 841(b)(1)(C).

12.    I know based on my training, knowledge, and experience that individuals who unlawfully distribute controlled substances ("drug traffickers") commonly maintain their tools of the trade—including controlled substances, contraband, proceeds of drug sales, and records and documents related to their drug trafficking—within secure locations inside their residence and/or businesses both for their ready access and to conceal them from law enforcement.

13.    More specifically, I know that drug traffickers commonly maintain both the source of their illicit gains (the controlled substances themselves) and the proceeds of their crimes, in the form of U.S. currency, on-hand to readily maintain and finance their illicit drug business.

14.    I also know that drug traffickers commonly maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances. Likewise, I know that drug traffickers commonly maintain these books, records, receipts, notes, ledgers, etc., where they will have ready access to them.

4

15.     I also know that drug traffickers commonly maintain addresses or telephone numbers in books, papers, or on electronic media (computers, floppy disk, disks etc.) which reflect the names, addresses, and/or telephone numbers of their associates and clients.

16.     I also know that drug traffickers often utilize electronic equipment such as cell phones and other portable electronic devices, computers, currency counting machines, and telephone answering machines to generate, transfer, count, record, and/or store information concerning their drug trafficking.

17.     I also know that drug traffickers often take or cause to be taken photographs and videos of them, their associates, their property, and their product.  Drug traffickers usually maintain these photographs and videos in their possession.

18.     Finally, I know that drug traffickers commonly maintain firearms and ammunition in their possession—that is, on their person, at their residences, and/or in their vehicles—to protect and secure their supply of controlled substances, their profits from those sales, and other items necessary to maintain their illicit business.

## IV.  PROBABLE CAUSE FOR THIS SEARCH

19.     As set forth throughout this affidavit, I submit there is probable cause to believe that violations of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) [Felon-in-Possession of a Firearm] and 21 U.S.C. § 841(a)(1) [Distribution/Possession with Intent to Distribute Controlled Substances] (the "**TARGET OFFENSES**") have been committed, are being committed, and will continue to be committed by Shane E. Hall and other individuals both known and unknown.  Furthermore, I submit there is probable cause to search the **SUBJECT PREMISES** for evidence of those crimes; contraband, fruits of those crimes, or other items illegally possessed; and property designed for use, intended for use, or used in committing those crimes.

5

20.     In June 2022, the Columbus Division of Police ("CPD") and the ATF initiated an investigation into Shane E. Hall and other individuals, both known and unknown to investigators at this time, for suspected illegal firearm possession and drug trafficking.

21.     During the investigation, CPD Task Force Detectives and ATF Special Agents utilized a previously known and reliable Confidential Informant ("CI") to gather criminal intelligence and evidence related to Hall and his associates. That CI provided the ATF with the following background information regarding Hall:

    a.  Hall traffics large amounts of narcotics, to include methamphetamine.

    b.  Hall is in often in possession of firearms.

    c.  Hall possesses firearms and sells narcotics from his residence, which is located at 2511 Lindsay Road, Obetz, Ohio (the "**SUBJECT PREMISES**").

22.     I conducted a query of the National Crime Information Center ("NCIC") and learned that Shane E. Hall has a prior felony conviction from roughly August 12, 2011, for "Felony Drugs: Possess W/Intent to Sell," out of Wayne County, West Virginia. Given this prior felony conviction, Hall is prohibited by federal law from possessing firearms and ammunition.

23.     On September 22, 2022, I reviewed a music video on YouTube.com that features Hall and one other individual. Based on the footage in that video, I observed that it was likely filmed at the **SUBJECT PREMISES**. Approximately 2 minutes and 46 seconds into the video (Yesr Thump f/ Thearl Beebe – Selfmade (Official Video)), the camera zooms in and shows Hall grabbing a pile of what appears to be U.S. currency. Next to Hall's hand is what appears to be a black revolver with a brown wooden handle. This video premiered on August 6, 2021. A screenshot is depicted below showing the currency and revolver just described:

6



24.    On September 22, 2022, I reviewed a different music video on YouTube.com that again features Hall and another individual. Based on the footage, I observed that this video was also likely filmed at the **SUBJECT PREMISES**. Approximately 42 seconds into the video (Chick Da Boss f/ Yesr Thump – No Love In It (Official Video)), Hall is shown holding what appears to be a Mac-style pistol with an extended magazine. This video premiered on June 7, 2021. A screenshot is depicted below showing Hall holding the pistol just described:



25.    On or about July 5, 2022, I met with the same known, reliable ATF CI described above for the purpose of making a controlled narcotics buy from Hall. I equipped the CI with a wire transmitter/video recording device and provided the CI with an amount of pre-recorded Government funds. SA Messner and I followed the CI to the **SUBJECT PREMISES**. The CI

7

entered the residence and purchased an amount of methamphetamine from Hall. The CI then returned to the predetermined meeting location where I took possession of the suspected methamphetamine. The CPD crime lab later tested the suspected controlled substances and deemed them positive for methamphetamine. The CI advised that Hall provided the CI with the suspected methamphetamine. This transaction was recorded by video and audio. I later watched and listened to the narcotics transaction between the CI and Hall. The audio and video of the narcotics transaction was consistent with the description of the transaction provided by the CI, and I was able to identify Hall in the video.

26.     On or about July 12, 2022, I met with the same CI for the purpose of arranging another controlled drug buy from Hall. I equipped the CI with a wire transmitter/video recording device and provided the CI with an amount of pre-recorded Government funds. SA Messner and I followed the CI to the **SUBJECT PREMISES**. The CI entered the residence and purchased an amount of methamphetamine from Hall. The CI then returned to the predetermined meeting location where I took possession of the suspected methamphetamine. The CPD crime lab later tested the suspected controlled substances and deemed them positive for methamphetamine. The CI advised that Hall provided the CI with the suspected methamphetamine. This transaction was recorded by video and audio. I later watched and listened to the narcotics transaction between the CI and Hall. The audio and video of the narcotics transaction was consistent with the description of the transaction provided by the CI, and I was able to identify Hall in the video.

27.     On or about September 21, 2022, I met with the same CI For the purpose of arranging another controlled drug buy from Hall. I equipped the CI with a wire transmitter/video recording device and provided the CI with an amount of pre-recorded Government funds. SA Messner and I followed the CI to the **SUBJECT PREMISES**. The CI entered the residence and

8

purchased an amount of methamphetamine from Hall. The CI then returned to the predetermined meeting location where I took possession of the suspected methamphetamine, which field tested positive for methamphetamine. The CI advised that Hall provided the CI with the suspected methamphetamine. This transaction was recorded by video and audio. I watched and listened to the narcotics transaction between the CI and Hall. The audio and video of the narcotics transaction was consistent with the description of the transaction provided by the CI, and I was able to identify Hall in the video.

28.     On or about October 14, 2022, I met with the same CI for the purpose of arranging another controlled drug buy from Hall. I equipped the CI with a wire transmitter/video recording device and provided the CI with an amount of pre-recorded Government funds. ATF Task Force Officer Wright and I followed the CI to the **SUBJECT PREMISES**. The CI entered the residence and purchased an amount of methamphetamine from Hall. The CI then returned to the predetermined meeting location where I took possession of the suspected methamphetamine, which field tested positive for methamphetamine. The CI advised that Hall provided the CI with the suspected methamphetamine. This transaction was recorded by video and audio. I watched and listened to the narcotics transaction between the CI and Hall. The audio and video of the narcotics transaction was consistent with the description of the transaction provided by the CI, and I was able to identify Hall in the video.

29.     Each of the controlled buys described above occurred at the **SUBJECT PREMISES**, which are located within the Southern District of Ohio.

9

## V. CONCLUSION

30.     Based on the foregoing, I believe that there is probable cause to issue a search warrant for the **SUBJECT PREMISES**, more particularly described in Attachment A, and to seize the items described in Attachment B, as those items constitute evidence of the **TARGET OFFENSES**; contraband, fruits of the **TARGET OFFENSES**, or other items illegally possessed; or property designed for use, intended for use, or used in committing the **TARGET OFFENSES**.

Respectfully submitted,

*Cole Benner*

Cole D. Benner, Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Sworn to before me and signed in my
presence and/or by reliable electronic means.

October 18, 2022

Kimberly A. Jolson
United States Magistrate Judge

10

## ATTACHMENT A

### Places to Be Searched

The **SUBJECT PREMISES** are further described as a residence located at 2511 Lindsay Road, Obetz, Ohio. The **SUBJECT PREMISES** include a ranch-style residence located north of Interstate 270 and south of Williams Road, within Franklin County, Ohio. The residence itself has a stone bottom with a white stone top and a large window near the front door, which is painted red. The numbers "2511" are affixed above the garage door. This warrant authorizes the search of the residence, the attached garage, any vehicles on the property, and any sheds or out-buildings. A photo of the **SUBJECT PREMISES** is depicted below:



## ATTACHMENT B

### Items to be seized

1. Any evidence or information related to the **TARGET OFFENSES** articulated in the Affidavit in Support of the Search Warrant Application.

2. Any evidence or information related to the identity of potential co-conspirators regarding the **TARGET OFFENSES**.

3. Any firearms or ammunition, including pistols, revolvers, long guns, or otherwise.

4. Any documents, records, boxes, or indicia related to the purchase, sale, transfer, or transportation of firearms and/or ammunition.

5. Any firearm parts, accessories, or other items commonly used or associated with the possession of firearms, including conversion devices, firearm magazines, and holsters.

6. Any cellular telephone(s) and any stored electronic data and/or communications contained therein.

7. Any indicia of occupancy, residency, rental, ownership, or dominion and control of the **SUBJECT PREMISES**, including any vehicles located thereon, including but not limited to state identification cards, drivers' licenses, bills, receipts for rent, cancelled envelopes, keys, deeds, purchase or lease agreements, land contracts, titles, vehicle registrations, or photographs.

8. Any illicit controlled substances or drug trafficking paraphernalia related to the manufacture, distribution, packaging, sale, purchase, or payment for controlled substances.

9. Books, records, notes, ledgers, and other papers relating to the manufacture, distribution, packaging, sale, purchase, or payment of controlled substances which may be maintained in either paper form or on computers or other electronic devices.

10. Cash, currency, currency counters, financial instruments, and any other records relating to controlled substances, the expenditure of proceeds of drug transactions, and evidence of any financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in drug trafficking.

11. The opening, search, and removal, if necessary, of any safe or locked receptacle or compartment, as some or all of the property heretofore listed may be maintained.

12. Any other items which constitute evidence of the **TARGET OFFENSES** identified above.